UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL HILD,<br><br>Defendant. | 19-CR-602 (RA)<br><br><u>MEMORANDUM OPINION AND ORDER</u> |

RONNIE ABRAMS, United States District Judge:

On April 30, 2021, Defendant Michael Hild was convicted, after a fourteen-day trial, of committing securities fraud, wire fraud, and bank fraud, as well as conspiring to do so. Dkt. 148. The Court granted Hild bail pending his appeal of that conviction to the Second Circuit and the United States Supreme Court. Dkt. 154; Dkt. 261. On February 17, 2026, the Second Circuit issued a mandate affirming Hild's conviction by opinion and summary order. Dkt. 225; *see United States v. Hild*, 147 F.4th 103 (2d Cir. 2025); *United States v. Hild*, 2025 WL 2924205 (2d Cir. Oct. 15, 2025) (summary order). And on April 27, 2026, the Supreme Court denied Hild's petition for a writ of certiorari. *See Hild v. United States*, 2026 WL 1127224 (U.S. Apr. 27, 2026). The Court then set Hild's surrender date for July 10, 2026. Dkt. 263.

Hild now moves for bail pending the Court's ruling on his forthcoming petition for a writ of habeas corpus. Dkt. 264 ("Def. Mot."). The Government filed an opposition, Dkt. 266 ("Gov. Opp'n"), to which Hild replied. Dkt. 267 ("Def. Repl."). The Government additionally filed a surresponse, Dkt. 269, to which Hild also replied. Dkt. 270. For the reasons that follow, Hild's motion is denied.

## LEGAL STANDARD

A federal court has the "inherent power" to grant bail to a habeas petitioner "contesting the legality of his custody." *Defino v. Thomas*, 2003 WL 40502, at *2 (S.D.N.Y. Jan. 2, 2003).[1] Bail pending habeas litigation "should only be granted, however, if the petitioner raises 'substantial claims' and there are 'extraordinary or exceptional circumstances which make the grant of bail necessary to make the habeas remedy effective.'" *United States v. Adelekan*, 2025 WL 2977803, at *2 (S.D.N.Y. Oct. 22, 2025) (quoting *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001)). As such, the Second Circuit has "consistently[] emphasized that this power is a limited one, to be exercised" only in "special," "unusual," "extraordinary," or "exceptional circumstances." *Mapp*, 241 F.3d at 226 (quoting *Ostrer v. United States*, 584 F.2d 594, 596 (2d Cir. 1978)); *see also Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990) ("The standard for bail pending habeas litigation is a difficult one to meet.").[2] "In short, the court asks whether this case is distinguishable from other habeas corpus cases." *Diaz v. Bell*, 2021 WL 4202567, at *1 (S.D.N.Y. Sept. 16, 2021), *R. & R. adopted*, 2022 WL 2003461 (S.D.N.Y. June 6, 2022).

## DISCUSSION

Without opining on the merits of Hild's forthcoming habeas petition, the Court denies Hild's application for bail pending habeas litigation because he has not established that "extraordinary or exceptional" circumstances exist "which make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 226; *see, e.g.*, *Jessamy v. Lamanna*, 2022 WL 523732, at *1 (S.D.N.Y. Feb. 22, 2022) ("Since Petitioner has not established the existence

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

[2] As the Second Circuit has noted, "[t]his standard is higher even than that created by 18 U.S.C. § 3143(b), which governs bail pending appeal," relief which the Court has previously granted. *United States v. Manson*, 788 F. App'x 30, 32 (2d Cir. 2019) (summary order).

of extraordinary circumstances, the Court need not address the merits of Petitioner's substantive allegations."); *Hayon v. Reardon*, 2021 WL 25365, at *5 (E.D.N.Y. Jan. 4, 2021) (similar).

To receive bail pending habeas corpus litigation, a petitioner must independently demonstrate that extraordinary circumstances exist which distinguish the case at hand from the ordinary posture of habeas petitions, which are litigated from confinement. As other judges have noted, "courts in this circuit have seldom found a case's circumstances so unusual that they merit release on conditional bail," *Calix v. United States*, 2024 WL 4635451, at *5 (S.D.N.Y. Oct. 31, 2024), though courts "have occasionally found that extraordinary circumstances exist where a petitioner is seriously ill, or where petitioner's sentence is scheduled to expire before habeas review would be completed," circumstances in which "immediate release [is] the only way to render the habeas remedy effective." *Laufer v. Annucci*, 2022 WL 6234984, at *2 (E.D.N.Y. Sept. 2, 2022); *see also Kiadii v. Decker*, 423 F. Supp. 3d 18, 20–21 (S.D.N.Y. 2018) (finding an extraordinary circumstance and granting bail pending habeas litigation to a petitioner in immigration detention "credibly claiming United States citizenship" where the Government did not "refute [p]etitioner's evidence" of the same or "provide any explanation or analysis" to support its position).

To establish an extraordinary circumstance justifying bail pending habeas litigation, Hild points to what he characterizes as "serious threats" to his safety while incarcerated that he has received from a member of the Virginia bar ("Counsel-1"). Def. Mot. at 6. Hild argues, without further explanation, that "suffer[ing] harm while in custody . . . would render any habeas remedy ineffective." *Id.* at 7. Counsel-1 represents an individual ("Client-1") that Hild and his wife, proceeding *pro se*, have sued in two separate proceedings. Gov. Opp'n at 5. In March 2026, Counsel-1 emailed Hild, stating:

> When do you report to your new accommodations? I know some people where you are headed and just want to make sure they will pay you a welcome visit. I suggest you have a welcome present ready to offer them just for your continued good health. Meanwhile, we are eagerly awaiting the day when the law catches up to the other member of your grifter family.

Def. Mot., Ex. D. About a month later, Counsel-1 sent another email to Hild, stating:

> When and where do you report? Since you won't be in the Richmond case anymore, the least I can do is send a house warming gift c/o the warden so you will have something there to welcome you when you arrive.

Def. Mot., Ex. E. After Hild attached these communications to the instant bail application, Counsel-1 sent an additional email, in June 2026, to Hild's criminal defense counsel, stating:

> I just read your letter to Judge Abrams dated June 10. In case anyone seriously believed that my tongue in cheek email to Mr. Hild—who, after defrauding my client and stealing his investment, had the gall to file two completely bogus claims of defamation against him—was some kind of threat (I cannot believe anyone would interpret it that way), I want to state in no uncertain terms that the email was not a threat. I do not practice and have never practiced criminal law. I do not know a single soul in any jail or prison, state or federal, in this country (or any other country). And I had no idea what prison Mr. Hild would be sent to, so obviously could not have made such a threat even if I had wanted to, which I did not. So that you won't be accused of misleading the court, you should supplement your letter to Judge Abrams with this email.

Gov. Opp'n, Ex. A.

The Government represents that it and the FBI interviewed Counsel-1 about these emails. In that conversation, "Counsel-1 confirmed that he has no intention of harming Hild in any way," an assertion the Government "credits." Gov. Opp'n at 5. Counsel-1 further explained that he was "frustrat[ed]" by Hild's lawsuits against Client-1 because "Client-1 had lost the investment he had made with Hild's company, Live Well, and then Hild added insult to injury by filing what Counsel-1 believed to be frivolous lawsuits causing Client-1 to incur further costs." *Id.* Hild disputes the Government's conclusion that Counsel-1 does not pose a threat to his safety on three grounds: (1) that "[n]o reasonable person" would perceive Counsel-1's emails as "tongue in cheek" jokes, as Counsel-1 would later characterize them; (2) that Hild views Counsel-1's comments as a credible

threat given Rule 4.1(a) of the Virginia Rules of Professional Conduct, which prohibits a lawyer from making "a false statement of fact"; and (3) that the Government's investigation has been inadequate. Def. Repl. at 7 n.2.

"An inmate's fear for his safety and belief he is uniquely at risk" while incarcerated does not, generally, "present an extraordinary circumstance." *Laufer*, 2022 WL 6234984, at *2. While the Court in no way minimizes the importance of Hild's safety while incarcerated, "granting bail is not the only way to guard against such risks," which are managed by the Bureau of Prisons in the ordinary course. *Ancona v. Lantz*, 2005 WL 839655, at *10 (D. Conn. Apr. 8, 2005); *see also Laufer*, 2022 WL 6234984, at *2 (denying bail to habeas petitioner who had experienced "cruel treatment by other inmates as a result of his age and Jewish orthodoxy"). Courts, for example, have denied bail pending habeas litigation to incarcerated former police officers who cite the increased risks to their safety—due to their prior position—as an "extraordinary circumstance." *Ancona*, 2005 WL 839655, at *10. And in *Cunningham v. Poole*, a habeas petitioner's application for bail was denied even where he claimed his life was "in serious jeopardy" after his nose was broken in a physical "altercation" with another inmate. 2007 WL 3353115, at *1 (N.D.N.Y. Nov. 7, 2007).

Counsel-1's conduct is, frankly, unbefitting a member of the bar, and demonstrates an extraordinary lack of judgment. The Court, though, is simply not convinced that Counsel-1 poses a threat to Hild while he is incarcerated. And any such threat, if it does exist, can be mitigated by the Bureau of Prisons through protective custody and other measures. *See, e.g.*, *Cunningham*, 2007 WL 3353115, at *1 (noting that the petitioner had already been granted protective custody status and transferred to another correctional facility when his application was filed). Accordingly, the Court sees no reason why Counsel-1's communications with Hild present an "extraordinary

circumstance" "which make[s] the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 226.[3]

## CONCLUSION

For the foregoing reasons, Hild's motion for bail pending habeas litigation is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 264.

SO ORDERED.

Dated: June 26, 2026
New York, New York

Ronnie Abrams
United States District Judge

[3] In his Reply, Hild also points to the alleged strength of his forthcoming habeas petition as an "exceedingly rare circumstance[]." Def. Repl. at 6–7; *see id.* ("In no other case of note has a trial court discredited a lengthy affidavit from trial counsel, as this Court did, only to have additional evidence come to light that undermines the government's core argument at trial—evidence that is corroborated by new statements from the government's primary cooperating witness, including in filings in another federal court."). Hild does not provide any authority, though, standing for the proposition that the strength of the claims in a habeas petition can, standing alone, also constitute an extraordinary circumstance, and the Court is aware of none. Indeed, notwithstanding the merits of a claim, "a petitioner's continued confinement during habeas review is normally not considered an extraordinary circumstance entitling him to bail." *Hayon*, 2021 WL 25365, at *6; *see, e.g.*, *Washington v. Franklin Corr. Facility*, 2019 WL 6522003, at *2 (N.D.N.Y. Dec. 4, 2019) ("Such an assertion, that Petitioner will ultimately be successful with his habeas petition because he is incarcerated in violation of his constitutional rights, does not constitute an extraordinary circumstance for the purposes of granting bail."). In *Iuteri v. Nardoza*, for example, the Second Circuit rejected an appellant's argument that his case presented an extraordinary circumstance because, if his petition were to be granted, it would "mean that his incarceration . . . would have been without basis." 662 F.2d 159, 162 (2d Cir. 1981). As the Circuit noted, "there is nothing unusual about this," as "[v]irtually all habeas corpus petitioners argue that their confinement is unlawful." *Id.*; *see also Harris v. United States*, 1997 WL 272398, at *1 (S.D.N.Y. May 21, 1997) ("The fact that [petitioner's] post-petition incarceration will have been without just basis if his petition eventually succeeds does not constitute an extraordinary[] circumstance entitling him to bail.").